Accordingly, the judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

**OHIO TEAMSTERS EDUCATIONAL AND SAFETY TRAINING TRUST FUND, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 81–1691.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 31, 1982.
Decided Nov. 8, 1982.

Michael P. Mahoney, Knepper, White, Arter & Hadden, Columbus, Ohio, for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., John F. Murray, Michael L. Paup, Glenn L. Archer, Jr., Robert A. Bernstein, Michael J. Roach, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and RUBIN,* District Judge.

KRUPANSKY, Circuit Judge.

This is an appeal by the Ohio Teamsters Educational and Safety Training Trust Fund (Fund) from a decision of the United States Tax Court entered August 4, 1981 which upheld a decision by the Commissioner of Internal Revenue (IRS) that the Fund did not qualify for an exemption pursuant to 26 U.S.C. § 501(c)(3) as a charitable organization.

The Fund was organized in 1976 pursuant to a collective bargaining agreement between the Teamsters and the Ohio Contractors Association. It is not disputed and a matter of record that the creation of the Fund was a '"bargained for" condition of employment in the collective bargaining agreement. The labor agreement specifically provided that each employer would contribute five cents to the Fund for each hour worked by an employee covered by the

contract. Moreover, the contract gave union members the right to strike any employer who failed to pay into the Fund according to the agreement. These payments from employers were to be the sole source of revenue for the Fund.

The Trust Agreement itself states the origin of the Fund as follows:

WHEREAS, the Association and the Union have entered into a Collective Bargaining Agreement on behalf of their respective members, and which Agreement, among other things, provides *as a condition of employment* that employer-members of the Association will during the term of the Collective Bargaining Agreement and may in the future agree that contributions of certain specified amounts of money will be made to an Educational and Safety Training Trust Fund, * * *.

(Emphasis added).

The Fund, which has not yet commenced disbursements, is to be managed by a board of four trustees; two from the employers' association and two from the Teamsters. The trustees are required by the Trust Agreement to seek certification as a 501(c)(3) charity and to award grants to employees, spouses and dependents in a specified order of priority reflecting the recipient's educational objective.

The selection of the actual recipients of the cash awards is to be made by a scholarship committee consisting of three individuals not related to the organizations involved in the Fund. Moreover, once a grant has been awarded, the Trust Agreement provides that it cannot be rescinded or terminated because the recipient, or his relevant family member, has voluntarily or involuntarily terminated his employment. Further, there is no minimum period of employment necessary to confer eligibility for a scholarship.

The Fund has estimated that, inclusive of spouses and dependents, the pool of potential grantees numbers approximately 15,000

---

* The Honorable Carl B. Rubin, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

to 17,000 persons. However, because no information has been developed as to the educational plans and interests of this pool, it is conceded that no reliable estimate has been made as to either the anticipated number of applicants or the number of grants to be awarded. The Fund has stated that the plan would be advertised and promoted among all eligible individuals.

Essentially, the IRS has maintained throughout these proceedings that the Fund will not be "operated exclusively for exempt purposes" as required by § 501(c)(3). The IRS contends that while the Fund may have the effect of promoting education among employees, the primary purpose of the Fund is to provide a form of compensation for services rendered by employees under the collective bargaining agreement.

The Fund has argued before the Tax Court and here on appeal that the procedures by which grants are to be made preclude a finding that the Fund's primary purpose is compensatory. Moreover, the Fund asserts that case authority interpreting § 501(c)(3) focuses on whether the ultimate "destination" of the disbursement is charitable and not whether the money was generated by a collective bargaining agreement or by altruistic contributions.

The Tax Court, which considered the case on the stipulated administrative record and accepted the facts contained therein as true, concluded that the creation of the Fund in the context of collective bargaining, and the express contractual right of employees to strike if the employers' payments become delinquent, make "unavoidable" the conclusion that the "principal purpose" of the Fund is to "provide a form of compensation for employment services rendered." Tax Court found:

The above contractual provisions and the circumstances of petitioner's creation clearly establish that petitioner is operated primarily to provide a form of indirect compensation to employees covered by the collective bargaining agreement. Petitioner was created as a result of a contract settlement allocating an agreed dollar amount between wages and other employee benefits; if the contributing employers were not paying five cents an hour into the fund, they would be paying this amount either as cash compensation or other employee benefits. If the agreed employer contributions to petitioner are not paid, the collective bargaining agreement authorizes the union members to strike, just as would be expected if the employees failed to receive wages or other employee benefits earned by their performance of services pursuant to the collective bargaining agreement.

77 T.C. 189 (1981).

Accordingly, the sole issue confronting this Court is whether the Tax Court erred in determining that the Fund has a substantial non-charitable purpose and so is not exempt from taxation pursuant to 26 U.S.C. § 501(c)(3).[1]

Preliminarily, it must be noted that neither party has articulated the standard by which this Court should review the judgment below. The litigants simply commence with argument as to the merits of a particular result. While such a procedure may be acceptable at the level of the Tax Court where the case is tried *de novo, Biggs v. Commissioner,* 440 F.2d 1 (6th Cir. 1971), it does not acknowledge the more limited scope of review by this Court. *Kunz v. Commissioner,* 333 F.2d 556 (6th Cir.1964).

---

1. 26 U.S.C. § 501(c)(3) exempts from taxation: Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of the athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

It is of significance in the present case to initially determine whether the decision of the Tax Court is predicated upon a finding of fact or conclusion of law. Where the judgment below is ultimately a finding of fact, it is well-settled that the determination of the Tax Court is binding on the appellate court unless clearly erroneous. *Owens v. Commissioner,* 568 F.2d 1233 (6th Cir.1977). Moreover, because the Tax Court is constituted as "the basic fact-finding and inference-making body," *Boehm v. Commissioner,* 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78 (1945), the Court of Appeals is bound to accept "factual inferences from undisputed basic facts" unless such inferences are themselves clearly erroneous. *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). *Accord, Tennessee Securities, Inc. v. Commissioner,* 674 F.2d 570 (6th Cir.1982).

The conclusion that an entity is not "organized and operated exclusively for exempt purposes," 26 U.S.C. § 501(c)(3), has long been considered to be a finding of fact. *United States v. Dykema,* 666 F.2d 1096 (7th Cir.1981); *Federation Pharmacy Services, Inc. v. Commissioner,* 625 F.2d 804 (8th Cir.1980); *Senior Citizen Stores, Inc. v. United States,* 602 F.2d 711 (5th Cir. 1979); *Haswell v. United States,* 500 F.2d 1133 (Ct.Cl.1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *Elisian Guild, Inc. v. United States,* 412 F.2d 121 (1st Cir.1969); *Parker v. Commissioner,* 365 F.2d 792 (8th Cir.1966), *cert. denied,* 385 U.S. 1026 (1967); *Commissioner v. John Danz Trust,* 284 F.2d 726 (9th Cir.1960); *Virginia Professional Standards Review Foundation v. Blumenthal,* 466 F.Supp. 1164 (D.D.C.1978). *See also* 6 Mertens, The Law of Federal Income Taxation § 34.07 at 24 (1968):

> The basic problem is to determine the primary or dominant purpose for which the organization was created, and to ascertain whether such purpose is carried out in the operations conducted by the organization.

(Emphasis added).

This emphasis in the authorities upon the actual purpose of an organization is a direct reflection of the statute itself which requires that an entity be both organized and operated "exclusively" for an exempt purpose to obtain tax exemption. 26 U.S.C. § 501(c)(3). This provision of exclusivity has been construed by this Court to mean "that an organization is not exempt if it has *any substantial* noncharitable purpose." *Harding Hospital, Inc. v. United States,* 505 F.2d 1068, 1072 (6th Cir.1974) (emphasis added).

Applying these standards to the matter at bar, the Tax Court found from the record that the Fund has a substantial noncharitable purpose in paying cash grants to employees; which purpose is essentially to defer disbursement of the five cents per hour portion of the negotiated wage paid to the Fund until such time as it can be distributed as a tax free grant. The Tax Court quoted the following characterization of the Fund rendered by the present appellant in the proceedings below:

> In the negotiations which resulted in the establishment of this fund, a financial settlement was reached between the management and labor representatives. In allocating the agreed dollar settlement between direct compensation and various other employee benefits, the union representatives requested that a scholarship fund be established. Their stated purpose was and is to encourage increased education among their membership and their families. *Amounts contributed to this fund could have otherwise been direct compensation to the union members working under the contract.*

(Emphasis added).

Moreover, section 6 of Article XII of the bargaining agreement provides that the employers will treat payments to the Fund required by the contract as "necessary business expenses," such as wages and salaries, and not as charitable contributions. *Id.*

On appeal, the Fund seeks to shift the emphasis from the compensatory purpose underlying the Fund's creation, to an analysis of the manner in which assets will be distributed pursuant to the so-called "desti-

nation rule." The rule, first articulated in *Trinidad v. Sagrada Orden,* 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458 (1924), states that where the only objective of an organization is charitable, a tax exemption will not be denied because an organization raises money for that objective by commercial activity. The "destination rule" however is misapplied to the matter at bar.

Essentially, the Fund ignores the fact that the "destination rule" itself is not applicable until it is established as a matter of fact that an organization's purpose is, indeed, exclusively charitable. As noted by the Fifth Circuit in *Senior Citizens Stores, Inc. v. United States, supra,* 602 F.2d at 712, the operation of a business by a charity will not defeat its exemption "as long as it does so in furtherance *of the charitable purpose.*" (Emphasis added). *See also* 26 U.S.C. §§ 511, 512; 26 C.F.R. § 1.501(c)(3)–1(e)(1). This rule operates more in the nature of a savings clause for otherwise charitable groups than a test for initially determining the actual purpose of the organization. In the matter at bar, the finding of the Tax Court that the Fund is designed, in substantial part, to shelter current wages for subsequent disbursement as tax-free "scholarships" is not rendered clearly erroneous because the money involved will ultimately provide for education; the critical inquiry remains whether the organization has any substantial non-charitable purpose. *Harding Hospital, supra.* As succinctly stated by the Supreme Court in the seminal case of *Better Business Bureau v. United States,* 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945):

> [T]he presence of a single non-educational purpose, if substantial in nature, will destroy the exemption *regardless of the number or importance of truly educational purposes.*

(Emphasis added).

■ Bearing in mind that this tribunal is not free to discard a reasonable finding of fact merely because it might have reached a different conclusion upon a *de novo* examination, this Court concludes that the Tax Court was not clearly erroneous in finding

that a substantial purpose of the Fund is to provide deferred compensation for services performed under the labor agreement and so the Fund is not exempt from taxation pursuant to section 501(c)(3). Accordingly, the decision of the Tax Court is affirmed.