LOCAL UNION 712, I.B.E.W. SCHOLARSHIP TRUST FUND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Local Union 712, I. B. E. W. Scholarship Trust Fund v. Commissioner
Docket No. 9510-80X.
United States Tax Court
T.C. Memo 1983-76; 1983 Tax Ct. Memo LEXIS 725; 45 T.C.M. (CCH) 675; T.C.M. (RIA) 83076; February 2, 1983. J. Philip Colavincenzo *726 and Robert J. Jones, for the petitioner. Elizabeth S. Henn, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined that petitioner did not qualify for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(3). [1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2] The issues for our decision are whether petitioner is operated exclusively for exempt purposes within the meaning of section 501(c)(3). The case was submitted for decision on the stipulated administrative record under Rule 122, Tax Court *727 Rules of Practice and Procedure. The factual representations in the administrative record are assumed to be true for purposes of this proceeding, and the administrative record is incorporated herein by reference. Petitioner Local Union 712 I.B.E.W. Scholarship Trust Fund is a trust established on January 14, 1967 pursuant to an agreement between the Western Pennsylvania Chapter, National Electrical Contractors Association, Inc., Beaver County Division (the association) and Local Union No. 712 International Brotherhood of Electrical Workers (the union). The trust agreement was amended on February 10, 1977, April 20, 1977, and June 10, 1977. The governing document herein is the trust agreement between the union and the association, as amended on February 10, 1977 (hereafter the trust agreement). [3]
Petitioner's address at the time it filed the petition in this case was 375 Market Street, Beaver, Beaver County, Pennsylvania 15009. Its Application for Recognition of Exemption under section 501(c)(3) was filed with the Internal Revenue *728 Service on November 26, 1975. The Commissioner issued a final adverse ruling on March 19, 1980. Petitioner was organized pursuant to a collective bargaining agreement between the union and the association and was established for the purpose of awarding scholarships to the childred of union employees. Petitioner's sole source of support is from contributions made by members of the association pursuant to Article IV of the trust agreement and the annual collective bargaining agreement between the association and the union. The amount of each employer's contributions is determined under the annual collective bargaining agreement, computed on the gross electrical labor payroll. Article V of the trust agreement authorizes and empowers the board of trustees of the trust fund to enforce payment of these contributions and to assess penalties for delinequent payments. The agreement provides that "failure to comply with the applicable provisions relating to contribution and reporting to the I.B.E.W., Local 712 Scholarship Trust Fund shall constitute a breach of the working agreement between N.E.C.A. and the union with respect to the 'delinquent member'." Article VI of the trust agreement *729 sets forth the eligibility requirements and the procedures that an individual must follow in order to obtain a scholarship. Paragraph 1 of Article VI provides that: (a) An Applicant must be an unmarried 12th grade student, or an individual who is certified as having graduated from the 12th grade within 24 months from the date of application. (b) An Applicant must have taken, or be scheduled to take, the Scholastic Aptitude Test as administered by the Educational Testing Service or a similar accredited examination applicable to the institution of higher learning to which they aspire at the time of application for said Scholarship benefits. (c) An Applicant must be the son, daughter, stepchild or legally adopted child of an employee as said term is defined in Article I, - Section d, of this Agreement. [4]
*730 An applicant for a scholarship must submit an application form by November 15 of the year preceding the academic year for which the money will be awarded. In addition to completing the form, each applicant must submit his or her Scholastic Aptitude Test results, high school academic records, and records of extracurricular activities. The applicant must also furnish such other written statements and must participate in such personal interviews as the trustees may require. An individual who has received a scholarship will continue to receive the scholarship even if his or her parent or step-parent ceases to be a member of Local 712 or ceases to be employed by any of the participating employers. The recipient need only demonstrate that he or she is making satisfactory academic progress toward the degree or certification being sought. Aricle III of the trust agreement provides that the management and control of petitioner are vested in a board of trustees which is composed of six trustees--three appointed by the association and three by the union. The six trustees in turn select an independent trustee who is not a member of the association or the union.In the event the initial *731 six trustees cannot reach a decision, the matter is submitted to the independent trustee, whose decision is binding on all parties. Article VII, paragraph 2 of the trust agreement provides that all grants by petitioner shall be competitively awarded based upon the evaluation of information supplied by each applicant to the board of trustees. Since 1972, all applicants were eligible for the scholarship under the terms of the trust agreement and all such applicants were awarded scholarships. From 1967 through 1971, all applicants were eligible but not all were awarded scholarships. The ratio of scholarships awarded to the number of applicants for 1967, 1968, 1969, 1970 and 1971 were 2:5, 2:8, 2:3, 3:5 and 2:5. Article IV, paragraph 18 provides that no part of petitioner's net earnings shall inure to the benefit of any private shareholder or individual.
In explaining his final adverse ruling with respect to petitioner's exempt status under section 501(c)(3), the Commissioner listed the following reasons: The information presented in the administrative file and in a telephone conversation with the organization's representative indicates that the Scholarship Trust Fund was *732 set up as a result of a collective bargaining agreement. Furthermore, the information provided indicates that the Scholarship Trust Fund is also a required item in the collective bargaining agreement. Since this is the case, the Scholarship Trust Fund does not meet the guidelines under section 4.01 of Rev. Proc. 76-47. The information furnished also indicates that the sole activity of the organization is the provision of grants that are compensatory in nature to the members of the Union. Under this circumstance, the organization is not operated exclusively for exempt purposes under section 501(c)(3) of the Code since it is serving private interests. See section 1.501(c)(3)-1(d)(ii) of the regulations and Miss Georgia Scholarship Fund, Inc., supra.See also Rev. Rul. 67-367, 1967-2 C.B. 188 * * * Based on the above facts and rationale, we have concluded that you are not operated exclusively for exempt purposes under section 501(c)(3) of the Code, since you are serving the private interests of your members. * * * The issue herein centers on whether petitioner is operated exclusively for exempt purposes within the meaning of section *733 501(c)(3). Respondent argues that since petitioner was organized pursuant to a collective bargaining agreement between the association and the union and only dependents of union employees are eligible, its primary purpose is compensatory rather than charitable. Thus, respondent contends that petitioner is serving the private interests of the association and union and is thus not operated exclusively for exempt purposes. Section 1.501(c)(3)-1(d)(2), Income Tax Regs.[5] Petitioner contends, however, that the awarding of scholarships is not compensatory merely because petitioner was created under a collective bargaining agreement and that they are limited to dependents of employees. Rather, since the primary purpose is to encourage educational pursuits, petitioner is operated exclusively for exempt purposes. *734 On the basis of the administrative record, we conclude that petitioner has failed to establish that it is operated "exclusively" for exempt purposes notwithstanding the fact that its activities may to some extent resemble charitable activities. Since failure to satisfy the operational test is itself a sufficient basis for denial of petitioner's application for recognition of exempt status under section 501(c)(3) (see section 1.501(c)(3)-1(a)(1), Income Tax Regs.), we do not address respondent's alternative contention that petitioner is nonexempt on the basis that petitioner's net earnings inure to the benefit of private individuals.
An organization may qualify for exemption from income tax under sections 501(a) and 501(c)(3) only if it is operated "exclusively" for one or more of the exempt purposes specified under section 501(c)(3). A substantial nonexempt purpose will disqualify an organization from exemption under section 501(c)(3) regardless of the number *735 or importance of its exempt purposes. Better Business Bureau v. United States,326 U.S. 279, 283 (1945); Presbyterian and Reformed Publishing Co. v. Commissioner,79 T.C. 1070 (1982). Petitioner herein engages in only one activity--the payment of cash grants to the dependents of union employees who wish to attend college. In determining whether petitioner's activity meets the operational test under section 501(c)(3), we must ascertain the purpose of such activities. Copyright Clearance Center, Inc. v. Commissioner,79 T.C. 793 (1982); Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,77 T.C. 189, 196 (1981), affd. 692 F.2d 432 (6th Cir. 1982). The granting of scholarships for the pursuit of educational activities certainly serves an educational purpose, and in one sense is an "advancement of education." [6] But this would be true if the beneficiaries were the members of an extended family, yet the organization would clearly not be exempt. Education is a subcategory of the term charitable, *736 but the educational activities must benefit a sufficiently broad class (generically, not numerically) to confer a public benefit. Here the benefits are available only to the children of the employees covered by the collective bargaining agreement. The class is too restricted to confer the public benefit contemplated by section 501(c)(3). What we have here is not charity but compensation in the form of a negotiated fringe benefit. Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,supra at 197-198; Miss Georgia Scholarship Fund, Inc. v. Commissioner,72 T.C. 267, 271 (1979). [7]
In Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,supra (hereinafter Ohio Teamsters), we recently held that a scholarship fund set up pursuant to a collective bargaining agreement between *737 a union and an association was not operated exclusively for exempt purposes and thus was not exempt under section 501(a) and 501(c)(3). The creation and operation of the scholarship fund in the instant action is strikingly similar to the one we considered in Ohio Teamsters.
Petitioner therein was created under a collective bargaining agreement between the Ohio Teamsters Union and the Ohio Contractors Association. The petitioner there awarded grants to eligible employees and their families for the purpose of furthering their education. It sole source of support was from employer contributions as determined under the collective bargaining agreement. While recognizing that petitioner's educational activities in one sense advanced education (see section 1.501(c)(3)-1(c)(2), Income Tax Regs.), we nonetheless concluded that "petitioner's principal purpose is to provide a form of compensation for employment services rendered under the collective bargaining agreement." 77 T.C. at 198. The same result must apply herein. Petitioner was created pursuant to the collective bargaining agreement between the union and the association. Pursuant *738 to such agreement, the employer agreed to contribute a certain amount each year to a scholarship fund for the benefit of children of union employees.These payments are mandatory under the collective bargaining agreement, and each employer's contribution is computed on his gross electrical payroll. In fact, the trust agreement sets forth in detail the procedures to be followed in collecting these obligatory payments. Under the agreement, an employer is assessed a penalty for delinquent payments. In addition, the trust agreement provides that "failure to comply with the applicable provisions relating to contribution and reporting to the I.B.E.W. Local 712 Scholarship Trust Fund shall constitute a breach of the working agreement between N.E.C.A. and the union with respect to the 'delinquent member.'" [8] Thus, there can be no doubt that the scholarship fund was a negotiated fringe benefit intended to provide union employees with a form of compensation for past or future services rendered by such employees under the collective bargaining agreement with the association. See Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,supra.
*739 As in Ohio Teamsters, the scholarship fund was included in the collective bargaining agreement along with other provisions providing for working conditions and a description of required employee tasks and compensation (both direct and in the form of fringe benefits). It was a bargained-for benefit and regarded as part of the compensation of the employees for services performed under the collective bargaining agreement. See Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,supra at 199; see also Grant-Jacoby, Inc. v. Commissioner,73 T.C. 700, 708 (1980); Armantrout v. Commissioner,570 F.2d 210, 212-213 (7th Cir. 1978), affg. 67 T.C. 996 (1977). Certainly petitioner, who bears the burden of proof, Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure, has offered no evidence indicating that petitioner's principal purpose was not compensatory. [9]
Petitioner argues, however, *740 that the primary purpose could not be compensatory since the scholarships are awarded on a competitive basis and the employees have no assurance that their dependents will ever qualify for such scholarship. We do not agree. Although the by-laws of the trust agreement state that the scholarships be awarded competitively, since 1972 all applicants were eligible for the scholarship under the terms of the trust agreement and all such applicants were awarded scholarships. Petitioner counters this statistic by arguing that potential applicants self-select themselves on the basis of the academic, extracurricular and personal standards established under the trust agreement. However, the trust agreement sets forth no such standards. All that is required is that applicants submit their high school academic records, Scholastic Aptitude Test results and a list of extracurricular activities. There is no indication that a superior record is necessary.
In any event, a benefit provided by an employer may still be compensatory although no employee is assured of obtaining such benefit. As we stated *741 in Ohio Teamsters (77 T.C. at 199-200): It is true that no employee is guaranteed benefits under the plan, and that employer contributions to the trust are arguably excludable from income of the employees at the time of their receipt as "scholarships." However, as a result of the bargained-for employer contributions, employees, their spouses, and dependents obtain a potential source of funds for education which would not be available except for the existence of an employment relationship with contributors to the fund. This bargained-for benefit may be regarded as part of the compensation of the employees for services performed under the collective bargaining agreement. * * * Here, the "scholarship" program was a negotiated fringe benefit which the employers are contractually obligated to provide or suffer a strike. In the circumstances, we find that petitioner was operated primarily for the purpose of providing deferred compensation for services rendered under the collective bargaining agreement, and is thus not operated exclusively for exempt purposes. Petitioner therefore does not qualify for exemption from income taxation under sections 501(a) and 501(c)(3). *742 [10] [Fn. ref. omitted.] Accordingly, for the reasons set forth we hold that petitioner was not operated exclusively for a purpose exempt under section 501(c)(3), and that it does not qualify for tax-exempt status under that section. An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated. ↩
2. The jurisdictional requirements specified in sec. 7428, I.R.C. 1954, have been satisfied: petitioner is the organization whose exempt status is in issue; it has exhausted its administrative remedies; and this action was timely filed. Sec. 7428(b), I.R.C. 1954; see Rule 210(c), Tax Court Rules of Practice and Procedure.↩
3. A proposed amendment to the trust agreement dated June 9, 1979 was not formally executed at the time of the filing of the petition herein.↩
4. Article I, section d of the trust agreement defines the term "employee" to mean: [A]ny individual employed by an Electrical Contractor under the terms of an existing bargaining agreement with the Union, or who is bound, or agrees to be bound by a formal written agreement, by the terms of the current bargaining agreement between N.E.C.A. and the Union, and who qualifies as an employee under State and Federal regulations pertaining to Welfare Plans and who has worked a minimum of 18,400 straight-time hours during a consecutive ten-year period under the jurisdiction of IBEW Local 712.↩
5. Respondent in his adverse determination letter also noted that petitioner failed to meet the guidelines set forth in Rev. Proc. 76-47, 1976-2 C.B. 670 which provides procedures for determining whether grants made by an employer-related educational assistance foundation qualify as scholarships under sec. 117(a), I.R.C. 1954↩. Since these guidelines are explicitly not directed to the question of whether the grants are consistent with exempt status, it is of little relevance herein. We also express no opinion as to whether petitioner's grants would qualify as "scholarships" under this Revenue Procedure.
6. See sec. 1.501(c)(3)-1(d), Income Tax Regs.↩
7. This is not to suggest that the source of the funds is inimical to exemption. Plainly, if the employees negotiated for contribution to a foundation providing health care to poor people in the community, the foundation could be exempt even though the employees themselves were potential beneficiaries.↩
8. See Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,77 T.C. 189, 198 n. 5 (1981), affd. 692 F.2d 432↩ (6th Cir. 1982).
9. The administrative record contains no precise information as to circumstances surrounding the actual insertion of the provisions for a scholarship fund in the collective bargaining agreement.↩
10. For the reasons set forth in Ohio Teamsters, our memorandum decision in Chase v. Commissioner,T.C. Memo. 1960-49, and various revenue rulings noted by petitioner are distinguishable from the circumstances herein. Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner,supra↩ at 200.