**POLICE BENEVOLENT ASSOCIATION OF RICHMOND, VIRGINIA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 86–0565–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 13, 1987.

James C. Roberts, Collins Denny, III, James S. Crockett, Jr., Evelyn E. Small, Mays & Valentine, Richmond, Va., for plaintiff.

Asst. U.S. Atty. Debra Prillaman, Stuart D. Gibson, Trial Atty., Tax Div., U.S. Dept.

of Justice, Washington, D.C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on defendant's motion to dismiss the instant action for failure to state a claim upon which relief may be granted, under Fed.R. Civ.P. 12(b)(6). Having been fully briefed, the motion is now ripe for disposition.

*Facts*

The plaintiff, Police Benevolent Association ("PBA"), is a non-stock Virginia corporation, incorporated in 1901. The association has three classes of members: (1) active members, comprised of the policemen and policewomen employed by the Richmond Bureau of Police who voluntarily join PBA; (2) inactive members, comprised of former active members who have retired; and (3) contributing and life members, who make voluntary contributions to the PBA of at least $5 and $25, respectively. Management is vested in a Board of Directors, consisting of 16 active members, 6 life or contributing members, and the Chief of Police, *ex officio*. Active members possess the sole voting rights in the corporation.

According to the Restated Articles of Incorporation, adopted by PBA on January 28, 1982, and currently in effect, PBA's purpose is to "accumulate a fund, the income from which will be used to provide pensions for the maintenance, support and welfare of active members of the corporation who are retired from the Bureau of Police of the City of Richmond, Virginia. . . ." Restated Articles, Article II, § 1. Article II further provides that "[t]he Corporation shall not conduct or carry on any other activities than those expressly set forth herein which are not permitted to be conducted or carried on by an organization exempt from Federal income tax under Section 501(c)(3)."

PBA is funded by contributions from outsiders, including contributing and life members, and by mandatory dues paid by all active members. PBA funds are managed by the Board of Directors, and supplemental pension benefits are paid out to retired active members who meet the eligibility requirements.

According to PBA's Restated Articles of Incorporation, "[n]o part of the assets or net earnings of the Corporation shall inure to the benefit of, or be distributable to, any member, director or officer of the Corporation." Restated Articles, Article II, § 2. However, according to its complaint, plaintiff paid pension benefits of $278,839 to its inactive members in the year ending October 31, 1982; $311,363, in the year ending October 31, 1983; and $291,546, in the year ending October 31, 1984. Complaint, at ¶¶ 37–39.

In 1944, PBA was granted tax-exempt status under the then-existing version of the current 26 U.S.C. § 501(c)(4). In 1981, however, the Internal Revenue Service issued Revenue Ruling 81–58, 1981–1 C.B. 331, in which it announced that police benevolent associations, such as plaintiff, would no longer be granted tax-exempt status under Section 501(c)(4).

After amending and restating its articles of incorporation, plaintiff applied to the I.R.S. for a ruling that it was tax exempt under 26 U.S.C. § 501(c)(3). Such application was denied by the I.R.S. on the initial application and through the administrative appeal process.

Thereafter, PBA filed tax returns for the years ending October 31, 1982, and October 31, 1983, on March 5, 1984. On its 1982 return, it showed as due and paid $31,728; on its 1983 return, it showed as due and paid $33,613. Then, on March 12, 1984, plaintiff filed amended returns for 1982 and 1983, showing no tax liability and claiming refunds on the amounts paid. By certified letter dated February 8, 1985, the IRS disallowed plaintiff's claim for refunds on its amended 1982 and 1983 tax returns.

On January 10, 1985, plaintiff filed its tax return for the year ending October 31, 1984, showing as due and paying $41,311. On February 8, 1985, it filed an amended tax return, showing no tax liability and claiming a refund of the amount paid. The

IRS denied such claim by certified letter dated May 16, 1985.

## Procedural History

Plaintiff filed the instant action on September 3, 1986, essentially claiming entitlement to the refunds sought and disallowed for 1982 through 1984, and seeking such refunds, along with interest, costs, and attorneys' fees. It alleges that, in tax year 1982, PBA was tax-exempt under Section 501(c)(4) until it restated its articles of incorporation, and thereafter was exempt under Section 501(c)(3).

For tax years 1983 and 1984, PBA claims it is tax-exempt under Section 501(c)(3) as an organization organized and operated exclusively for charitable purposes.

The defendant filed its motion to dismiss pursuant to Rule 12(b)(6) on November 4, 1986, and filed its answer on December 3, 1986. Plaintiff's memorandum in opposition to the instant motion was filed on November 14, 1986, and defendant filed a reply memorandum on November 24, 1986.

Subject matter jurisdiction over the instant action is premised on 28 U.S.C. § 1346(a)(1), which gives the Court original jurisdiction of civil actions to recover taxes allegedly erroneously or illegally assessed or collected.

## The Merits

Defendant contends that, even taking as true the facts alleged by plaintiff, PBA's complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). The government argues that, under the facts alleged by plaintiff, (1) prior to January 28, 1982, it was not a civil league or organization whose net earnings were devoted exclusively to charitable purposes, making it tax-exempt under Section 501(c)(4); and (2) after that date, it was not organized and operated exclusively for charitable purposes nor did it meet the requirement that none of its net earnings inure to the benefit of any private shareholders or individuals, as required for tax-exempt status under Section 501(c)(3). Thus, defendant contends that plaintiff's complaint fails to state a set of facts upon which the Court could find PBA to be tax-exempt and order refund of the disputed sums.

Defendant's motion to dismiss may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The Court must accept the allegations of PBA's complaint as true to determine whether any "relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### A. Tax-Exempt Status under Section 501(c)(3).

Plaintiff's primary contention is that, since it amended and restated its articles of incorporation on January 28, 1982, it has qualified as tax-exempt under Section 501(c)(3) because it is organized and operated exclusively for charitable purposes.

Section 501(c) provides a list of organizations which are exempt from federal income tax, including:

> Corporations ... organized and operated exclusively for religious, charitable, scientific, testing for public safety, literacy, or educational purposes ..., no part of the net earnings of which inures to the benefit of any private shareholder or individual....

26 U.S.C. § 501(c)(3).

To qualify for exemption under 501(c)(3), PBA must prove that it is both organized and operated exclusively for charitable purposes. In addition, it must show that no benefit inured to any private shareholder or individual. Defendant claims that the facts alleged in plaintiff's complaint demonstrate that PBA fails to meet both of these requirements.

### 1. Charitable Purpose

■ In order to meet the charitable purpose requirement, PBA must establish that it (1) has a "charitable" purpose, and (2) has no substantial non-charitable purpose.

PBA contends that it is organized and operated for a charitable purpose because its activities lessen the burden of government. It alleges that its provision of supplemental pension benefits assists the Richmond Bureau of Police ("Bureau") in recruiting better police officers, keeping them on the force, and improving officer morale. Because the police officers are happier with their jobs, they perform better and stay longer, thereby reducing the Bureau's need to recruit and train new officers or pay higher pension benefits or other incentives to raise morale and retain officers. Thus, plaintiff argues that PBA's purpose of providing supplemental pension benefits serves to lessen the burden on the Bureau and, therefore, on the government, and qualifies as a charitable purpose.

Defendant contends that plaintiff's allegations are insufficient as a matter of law to establish that PBA is a tax-exempt charitable organization. It argues that any benefit PBA confers upon the government by its activities is merely incidental, and not an organizational and operational purpose of PBA. Rather, it argues that plaintiff's own allegations establish that PBA's purpose is to serve the purely private interests of PBA members—a purpose which does not qualify as charitable under Section 501(c)(3).

Plaintiff correctly asserts that the term "charitable" under Section 501(c)(3) has been given a broad interpretation and includes activities which lessen the burden on government. *See* 26 C.F.R. § 1.501(c)(3)–1(d)(2). However, the organization still must establish that it is organized and operated for the purpose of providing such benefits, and not merely that such benefits are conferred incidentally by a corporation which is organized and operated for the purpose of serving certain private interests. As the regulations provide,

An organization is not organized or operated exclusively for one or more [exempt purposes] unless it serves a public rather than a private interest. Thus, to meet the requirement of [Section 501(c)(3)], it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests.

26 C.F.R. § 1.501(c)(3)–1(d)(1)(ii).

Thus, the Court must determine whether, consistent with its allegations, plaintiff may prove a set of facts establishing that its organizational and operational *purpose* is to lessen the burdens of government, assuming for purposes of this motion that PBA does in fact confer such benefits.

First, the Court turns to PBA's organizational purpose. While an organization's own statement of purpose in its articles of incorporation is not determinative, it provides a helpful starting point. PBA's restated articles provide that its sole purpose is to provide supplemental pension benefits to retired active members of the corporation. *See* Restated Articles, Article II.

Additional allegations in plaintiff's complaint are instructive concerning its organizational purpose. Its organizational structure envisions police officers voluntarily joining the organization and paying annual dues with the purpose of recovering such contributions in the future as supplemental pension benefits upon retirement. Should an active member leave the police force before retiring, the Articles entitle him to recover his contributions. Further, only officers who voluntarily join PBA and pay their annual dues are eligible for pension benefits. While contributions from outsiders constitute a significant portion of PBA's income, active members who solicit such contributions receive a 20% commission, as well as a long-range benefit of increasing the fund available to pay their future pension benefits. Finally, active members comprise the majority of the Board of Directors and are the only members with the right to vote on matters submitted to the corporation.

The Court finds that these allegations, taken together, indicate that PBA was organized to serve the private interests of its active members in obtaining a larger pension upon retirement, and not to serve the

charitable public interest in lessening government burdens.

A 1981 Tax Court decision presented a nearly identical situation and reached the same result. *See Policemen's Benevolent Association v. Commissioner*, T.C.Memo. 1981–679, 42 T.C.M. (CCH) Dec. 38, 451(M), at 1750 (1981). The issue in *Policemen's Benevolent Association* was whether that association was operated exclusively for charitable purposes, qualifying it as a tax-exempt organization under Section 501(c)(3). Because the case was submitted to the Tax Court for declaratory judgment on a stipulated administrative record, the facts contained in the record were assumed true for purposes of deciding such issue.

These facts revealed that petitioner was a corporation organized, according to its constitution and by-laws, to promote a "friendly and fraternal spirit" among policemen in Westchester County and to "extend both moral and material aid and benefit to all deserving members." Members were classified as policemen under 45 years old, policemen over 45 years old, and members of police departments outside of Westchester County, but only members in the first category were eligible for retirement benefits. The Association was funded by membership dues and solicited contributions, just as in the instant case. Petitioner's activities included monthly meetings, funeral assistance, aid to needy members and their widows, scholarships to members' children, death benefits to members' families, free legal counsel to members, and retirement benefits to eligible members. Such retirement benefits were not based on need, and in 1977, accounted for $18,910 of $89,153 expended by the association, the remaining expenditures constituted operating costs.

Based on these facts, the Tax Court found that the petitioner's primary purpose was not charitable and that it, therefore, was not tax-exempt under Section 501(c)(3). Just as in the instant case, the association argued that its retirement program was designed to lessen the burdens of government and to increase police morale, both of which benefit the public. While the Court agreed that at least intangible public purposes were served, it found that "petitioner's dominant motivation was to pass economic benefit to its members—a distinctly private purpose." *Policemen's Benevolent Association*, 42 T.C.M.(CCH) at 1752. The Court noted that only petitioner's members, and not all County policemen, were eligible for benefits, and that payment of such benefits was not based on need. The Court concluded that "[i]n effect, petitioner is operating a publicly-funded, non-qualified pension plan, and any intended benefit to the public is merely incidental." *Id.*

The facts alleged by plaintiff are even more compelling in establishing that PBA's primary purpose is to serve the private interests of its members, with only incidental and coincidental benefit to the Bureau of Police. In the instant case, the *sole* organizational and operational purpose of PBA, according to its own articles of incorporation and the allegations of its complaint, is to accumulate and invest funds for the purposes of providing supplemental pension benefits to its active members upon retirement. *See* Restated Articles, Article II; Complaint, at ¶ 21.

Because plaintiff's complaint contains such allegation, the only issue before the Court on the instant motion to dismiss is whether an association with such purpose can possibly qualify as a charitable, tax-exempt organization under Section 501(c)(3). The Court finds, as a matter of law, that it cannot. The plaintiff, incorrectly in this Court's view, argues that an organization with such purpose can qualify so long as it can prove that its activities have lessened the burdens of government. In support of its contention, plaintiff principally relies on two cases, both of which are distinguishable from the instant case. *See Bok v. McCaughn*, 42 F.2d 616 (3d Cir.1930); *Young Men's Christian Association Retirement Fund, Inc. v. Commissioner*, 18 B.T.A. 139 (1929) (hereinafter "*Y.M.C.A.*").

In *Y.M.C.A.*, the Court held that the Y.M.C.A.'s retirement fund served a charitable purpose, where it was intended to "provide for the old age of the employees of a charitable organization [the Y.M.C.

A.]." The Court relied on evidence that creation of the retirement fund had decreased employee turnover by 13%. Further, the Y.M.C.A. itself was a tax-exempt charitable organization. Thus, the retirement fund benefitted an organization which was organized and operated exclusively for charitable purposes (the Y.M.C.A.), and therefore its "primary and inherent use" was to aid the Y.M.C.A. in fulfilling its charitable purpose. *Y.M.C.A.*, 18 B.T.A. at 144, 146. In making this determination, the Court also placed great weight on the fact that the association's income was derived principally from the contributions of the public and of the tax-exempt associations, while other benevolent associations had been held non-exempt because a significant portion of their income was derived from fixed annual dues paid by employee members. *Id.* at 148. Presumably, this fact reinforced the Board's conclusion that the fund served a public interest, rather than the private interest of its members.

*Y.M.C.A.* is readily distinguishable from the instant case on several fronts. First, and perhaps most importantly, *Y.M.C.A.* was decided by the Board more than fifty years ago. While the relevant statutory language remains the same, the interpretation of such language has changed significantly during such period, as evidenced by the fact that P.B.A. was granted tax-exempt status from 1944 to 1980.

Even under the reasoning in *Y.M.C.A.*, however, the Court does not find that PBA qualifies as tax-exempt. Unlike the Y.M.C.A. fund, the P.B.A. was not organized and operated to benefit a tax-exempt charitable organization. Further, a significant portion of its contributions are derived from members' annual dues, and no funds are received from a tax-exempt charitable organization as was true in *Y.M.C.A.*. Thus, the Court is not persuaded that the reasoning in *Y.M.C.A.* establishes that PBA is exempt under Section 501(c)(3).

Plaintiff also relies on *Bok v. McCaughn, supra,* along with several revenue rulings, to argue that organizations which reward public service have a tax-exempt charitable purpose. These cases, too,

miss the mark because, in each case, clearly the *purpose* of the organization was to provide a public benefit—reward of government service—and any pecuniary benefit to a particular private individual was incidental. In the instant case, the opposite is true: the purpose of the organization is to provide pecuniary benefit for the individuals who choose to join and contribute, and the incidental effect is to provide a benefit to the government.

Plaintiff's response to this argument, in its brief in opposition to the instant motion, still misses the point. It argues that the *means* used to serve a charitable purpose are not relevant in determining tax-exempt status, i.e., that it does not matter whether the charitable purpose is achieved by appealing to the pecuniary or public interest of the beneficiaries. Such argument is correct, in this Court's view, but fails to address the problem in the instant case. In each of the cases cited by plaintiff, the organizational and operational *purpose* was to provide a benefit to the government, and such benefit was obtained by providing an incidental benefit to certain private individuals. In the instant case, however, the stated organizational and operational purpose is to provide pecuniary benefits to certain private individuals who choose to join and contribute to PBA in exchange for receiving such benefits. It is alleged that fulfillment of such purpose incidentally provides benefit to the government because *some* police officers (PBA members) have higher morale and decide to stay with the force longer because of the benefits they expect to receive. Thus, none of the cases cited by plaintiff alter the Court's view that PBA, as a matter of law, cannot establish that it is organized and operated for a charitable purpose under any set of facts consistent with its allegations.

Even were plaintiff able to establish that one of its purposes is to lessen the burdens of government, it still must establish that it is organized and operated *exclusively* for that charitable purpose—a requirement that clearly cannot be met, in the Court's view.

As the Supreme Court has interpreted the exclusivity requirement, "the presence of a single [non-exempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly [exempt] purposes." *Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945); *see also Old Dominion Box Co. v. United States*, 477 F.2d 340, 344 (4th Cir. 1973) (substantial non-charitable activities destroy exemption, regardless of other charitable activities).

In the instant case, as the defendant points out, even assuming that one of PBA's purposes is to lessen the burdens of government, certainly a substantial, non-charitable purpose of the organization is to pool and invest the funds of active members in order to provide themselves with supplemental pension benefits upon retirement. In fact, it would be ludicrous to believe that active members, who control the Board of Directors and possess sole voting rights of the membership, join PBA, pay annual dues, solicit contributions, and exercise their voting rights solely, or even primarily, for the purpose of benefitting the government. Rather, at least a substantial purpose of the organization and a substantial part of its activities are intended to serve the pecuniary interests of its members.

Cases cited by the defendant and others found by the Court reinforce this conclusion. *See, e.g., Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner*, 692 F.2d 432 (6th Cir. 1982); *Policemen's Benevolent Association, supra*, 42 T.C.M. (CCH) Dec. 38, 451(M), at 1750 (1981). In *Ohio Teamsters*, the Sixth Circuit held that the challenged educational trust fund was not tax-exempt under Section 501(c)(3), although it served a charitable educational purpose, because it also served a substantial, non-exempt purpose. *Ohio Teamsters*, 692 F.2d at 436. The case involved a trust fund established by a collective bargaining agreement, under which the employer agreed to contribute to the fund five cents per hour worked by a covered employee. Such fund was used to award educational grants to employees, their spouses and dependents. Based on these facts, the Sixth Circuit affirmed the Tax Court's conclusion that the fund had a substantial, non-charitable purpose of providing deferred, non-taxable compensation to employees, as well as an exempt charitable purpose of providing educational assistance. *Id.* The Court explained that the fact that the grant recipients were the ultimate beneficiaries of the fund did not negate the fact that the employer's non-charitable purpose also was an objective in establishing the organization. *Id.*

A Second Circuit case, *Contracting Plumbers Cooperative Restoration Corp. v. United States*, 488 F.2d 684 (2d Cir. 1973), is also instructive on interpretation of the exclusivity requirement. In *Plumbers*, a group of plumbers formed a corporation for the purpose of insuring the efficient repairs of New York city streets which were damaged in the course of their plumbing work. Until that time, the city had been performing such repair work and billed the responsible plumber; however, the city program was inefficient and costly. Once the plumbers' corporation assumed responsibility, the program ran more efficiently and at substantially reduced expense.

Based on these facts, the Second Circuit held that the corporation's purposes were to serve both the public and the private interest of member plumbers. Therefore, the program was not tax-exempt because it had a substantial non-exempt purpose. *Id.* at 686–87.

In determining whether the corporation had any substantial non-exempt purpose, the Court examined four factors. First, it considered the formative history of the organization, which showed that the member plumbers had a substantial business interest in forming the corporation.

Second, it considered the purpose statement in the organization's by-laws as probative, although not conclusive, of the organization's "non-exempt purpose of mutual aid." *Id.* at 687. In *Plumbers*, the stated purpose was to operate "a program

... for rendering mutual help and service to the corporation's members by arranging for the repaving or replacement of streets ... required ... by the members of the corporation." *Id.*

Next, it examined the corporation's actual operation and noted that it offered "tremendous value to the economic interests of its members—a clearly non-exempt purpose." *Id.* The Court also noted that, in fulfillment of its social welfare purpose, the corporation had never made any repairs necessitated by the work of non-member plumbers. Finally, the Court noted that the benefits received by the plumbers were conditional on their payment of dues. Thus, the case was distinguishable from one in which merchants provided a service of benefit to all merchants, without providing any special benefit to those merchants who were members. In such case, the lack of special benefits would indicate that the organization's members were primarily interested in serving the public, and not merely their own ends. *Id.* Based on these factors, the Court held that the corporation provided "substantial and different benefits to both the public and its private members," and therefore was non-exempt. *Id.* at 687.

Examining these four factors in the instant case, it is clear that, under plaintiff's allegations, a substantial non-exempt purpose is served by PBA. First, its avowed purpose, in its articles of incorporation, is to provide supplemental pension benefits to its members. Second, its operations substantially further the economic interests of its members, and non-members receive no financial benefits. Finally, the policemen's benefits are conditioned upon their payment of PBA dues. Thus, even if PBA serves a charitable purpose, its allegations also establish a substantial non-exempt purpose, making it ineligible for tax-exempt status under Section 501(c)(3).

### 2. *Private Inurement*

In order to qualify as tax-exempt under Section 501(c)(3), PBA also must establish that no part of its net earnings "inures to the benefit of any private shareholder or individual." 26 U.S.C. § 501(c)(3).

Defendant contends that plaintiff's allegations establish as a matter of law that PBA fails this private inurement test because a large portion of its net earnings are paid to retired active members as pension benefits. Plaintiff argues that defendant misconstrues the test and that the pension benefits paid are permissible rewards given to policemen who served as instruments in fulfilling PBA's charitable purposes. The Court need not decide this issue as it has already determined that plaintiff has at least a substantial non-exempt purpose, preventing it from entitlement to tax-exempt status.

### B. *Tax Exempt Status under Section 501(c)(4).*

■ In Count I of its complaint, plaintiff alleges that it qualified as tax-exempt under Section 501(c)(4) until January 28, 1982, when it restated its articles of incorporation. The I.R.S. had earlier announced that it would no longer recognize police benevolent associations which provide retirement benefits to their members as exempt under Section 501(c)(4) for taxable years beginning after August 23, 1981. Rev.Rul. 81–58, 1981–1 C.B. 331.

Section 501(c)(4) provides tax-exempt status to

[c]ivic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

The regulations attribute the same meaning to the term "charitable" as found in the regulations under Section 501(c)(3). Treas. Reg. § 1.501(c)(4)–1(b).

Defendant contends, correctly in this Court's view, that plaintiff does not qualify for tax-exempt status under Section 501(c)(4) for two reasons: (1) it is not operated "exclusively for the promotion of so-

cial welfare" because it is "essentially a mutual self-interest type of organization," which provides primary benefits to its members; (2) it is not operated exclusively for charitable purposes, for the same reasons already discussed concerning the Section 501(c)(3) exemption.

The Court agrees with defendant's contention that plaintiff, as a matter of law, cannot qualify as a tax-exempt organization whose earnings "are devoted exclusively to charitable purposes," as already explained in the Court's discussion of Section 501(c)(3). For the same reasons, plaintiff cannot qualify as an organization "operated exclusively for the promotion of social welfare" because at least one substantial purpose of PBA is non-exempt. Thus, plaintiff's claim for a refund based on Section 501(c)(4) must be dismissed.

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss shall be granted, and the instant action shall be dismissed.