**HOUSING PIONEERS, INC.,**
**Petitioner–Appellant,**

v.

**COMMISSIONER, INTERNAL**
**REVENUE SERVICE,**
**Respondent–Appellee.**

No. 93–70583.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1995.

Decided March 7, 1995.

Amended June 20, 1995.

Jerry L. Harris, San Diego, CA, for petitioner-appellant.

Gary R. Allen, Linda Mosakowski, U.S. Dept. of Justice, Tax Div., Washington, DC, for respondent-appellee.

Before: BEEZER and NOONAN, Circuit Judges, and EZRA\*, District Judge.

NOONAN, Circuit Judge:

Housing Pioneers, Inc. (Pioneers) appeals the decision of the Tax Court denying it section 501(c)(3) status. We affirm the judgment of the Tax Court.

### FACTS

Pioneers was incorporated March 21, 1989 as a "nonprofit public benefit corporation" under California law. Its articles of incorporation announced its "specific purpose" to be "to provide innovative and affordable housing to low income and handicapped persons, including providing housing for pre-release and post-release persons who are or have been incarcerated in prisons." The articles of incorporation further declared the corporation to be organized and operated exclusively for charitable purposes "within the meaning of Section 501(c)(3) of the Internal Revenue Code." The incorporator was Jerry L. Harris.

Pioneers duly applied for exemption to the Internal Revenue Service (the IRS). In response to questions, Jerry L. Harris informed the IRS on January 30, 1990 that Pioneers had no facilities or office space and had published no information about itself. He added that on April 1, 1989 Pioneers had signed a joint management agreement with Grant Square Properties (Grant Square) to participate in a project by which Grant Square's property would be exempt from property tax. As part of the agreement

---

\* The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

Grant Square had lent Pioneers $5,000 to buy an interest in Grant Square of 1% and become a general partner in Grant Square. A subsequent letter from Harris informed the government that the Grant Square partnership was divided as follows: General partners: Towne Centre Investment, Inc. (9%) and Pioneers (1%); Limited partners: Jerry L. Harris (30%), Howard R. Harris (40%), David Harris (5%), Richard Harris (5%) and J.M. Hepps (10%). David and Richard Harris were Jerry Harris's brothers; Howard was his father; and Hepps was his grandfather. Towne Centre Investment, Inc. was wholly owned by Jerry and Howard. In addition to Jerry and Howard, the board of directors of Pioneers included nine persons not related to the Harrises and chosen for their interest in housing and social services.

Pioneers' plan of operation was keyed to the property tax exemption afforded by section 214(g) of the California Revenue and Taxation Code. According to section 214(a), if "the managing general partner" of a partnership in property used for low-income rental housing is a nonprofit meeting the criteria set out in section 214, the property is entitled to a tax exemption. Among these criteria are that at least 20% of the tenants meet certain low income requirements and that "[t]he owner of the property is eligible for and receives low-income housing tax credits pursuant to Section 42 of the Internal Revenue Code of 1986, as added by Public Law 99–514."

Pioneers' plan was to form partnerships in which the other partners would benefit from the property tax exemption obtained by Pioneers' participation. Part of the property tax savings would be retained by the partnership and used to keep the rents low; part of the savings would be paid to Pioneers and be used by Pioneers for its charitable purposes. In the Grant Square partnership, the first year of savings was to be divided 40% to Towne Centre Investment, Inc. for arranging the transaction, 60% to the Grant Square partnership; in subsequent years, Grant Square would keep 50% and Pioneers would receive cash from Grant Square equal to 50% of the savings. Although Pioneers was a co-general partner, its partnership duties were restricted by the agreement to assuring that the savings were applied to the reduction of the rents charged by the partnership and to assuring that the properties owned by the partnership complied with the requirements of Internal Revenue Code § 42 and California Revenue and Taxation Code § 214(g).

In March 1990 Pioneers entered into an agreement with Hidden Cove Associates similar to that with Grant Square but distinguished by the absence among the Hidden Cove partners of any relative of the Harrises.

## PROCEEDINGS

The Commissioner of Internal Revenue determined that Pioneers was not an organization described in section 501(c)(3). Pursuant to Internal Revenue Code § 7428, Pioneers invoked the jurisdiction of the Tax Court and sought a declaratory judgment to the contrary. In accordance with Rule 217(b) of the Tax Court Rules of Practice and Procedure, the case was decided on the administrative record. The Tax Court upheld the Commissioner on two grounds. First, Pioneers was disqualified because its proposed activities included at least one non-exempt purpose which was "substantial in nature." *See Better Business Bureau v. United States,* 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945) (interpreting exemption from the Social Security tax). This non-exempt purpose was to provide the benefit of both the California § 214 exemption and the federal § 42 credit to partnerships that were not exclusively charitable. Second, the benefits inured in part to private individuals—the Harrises in the case of Grant Square and the limited partners in the case of Hidden Cove. The Tax Court declared: "the California property tax reductions, even though they are to be used exclusively for the purpose of reducing the rents or otherwise maintaining the affordability of the residential units, inure indirectly at least to the benefit of the non-exempt partners in that the partnerships are thereby relieved of the necessity of main-

taining rents at a level sufficient to cover operating expenses which would otherwise have to be paid out of partnership capital." The forbidden purpose and the private benefits were, the Tax Court found, "inextricably" meshed.

Pioneers appeals.

## ANALYSIS

Pioneers presents an argument that is ultimately unpersuasive but is nonetheless attractive enough to deserve elaboration and powerful enough to require refutation. The argument, fully expanded, is paraphrasable as follows (quotation marks are employed not to indicate verbatim quotation but to distinguish the argument from any holding of this court):

"Not only section 214 of the California Tax and Revenue Code but federal tax law intended that in the production of low-income housing there will be collaboration between an exempt entity and for-profit partners. Specifically, Internal Revenue Code § 42(h)(5) provides that '[n]ot more than 90 per cent of the State housing credit ceiling for any State for any calendar year shall be allowed to projects other than qualified low-income housing projects described in subparagraph (B).' Subparagraph B describes a qualified low-income housing project as one in which 'a qualified nonprofit organization owns an interest in the project' and 'materially participates' in the development and operation of the project. To be qualified, a nonprofit must fit within § 501(c)(3) or (4). The statutory language implies that there will be other, for-profit partners who share with the § 501(c) organization in the ownership, development, and operation of the property. Fairly clearly, Congress sought to encourage low-income housing by encouraging nonprofits to join with for-profits in providing it. The inescapable corollary of such projects is that participation by the qualified nonprofit will bestow a tax credit on its for-profit partners. Indeed, once a partnership is formed by a non-profit with for-profits, one purpose—surely substantial—will be for the nonprofit to make a go of the partnership; and such purposeful endeavor will inescapa-

bly in part inure to the benefit of the private investors. If the Commissioner's position were correct, section 42(h)(5) would never work.

"The Commissioner has not refuted Pioneers' statutory argument or its logic. So what is different about Pioneers? It is a nonprofit yoked in partnership with private parties who stand to get something out of the partnership. The benefit to the private partners as found by the Tax Court consists in relieving them 'of the necessity of maintaining rents at a level sufficient to cover operating expenses'—in other words, of allowing them to provide low-income housing cheaply; that result is what federal tax law aims in Section 42 to achieve.

"The Commissioner contends that the appropriate standard of review of the Tax Court's findings of a substantial non-exempt purpose and of activity inuring to private benefit is clear error. Under the court's precedents these findings are treated as factual and so the clear error standard applies. *Church of Scientology v. Commissioner,* 823 F.2d 1310, 1317 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). The Commissioner contends there is no clear error here. The difficulty with the Commissioner's argument is that the factual findings of the Tax Court are not enough to carry the day for the Commissioner. Under section 42(h) a nonprofit is expected to have a substantial purpose to benefit a noncharitable partnership and part of the savings achieved are expected to inure to individuals without destroying the 501(c)(3) status of the non-profit and making section 42(h) inoperable. It is the court's job to interpret the Internal Revenue Code harmoniously; so the court must recognize that as a matter of law section 42(h) limits the requirements of section 501(c)(3)."

So runs Pioneers' argument as we understand it. It might well be a successful argument but we need not, and do not, rule upon it. A crucial factual foundation is missing. Pioneers has failed to show that it qualifies as a section 42(h) nonprofit. To be such an entity, according to § 42(h)(5)(B), Pioneers has to "materially participate (within the

meaning of section 469(h)) in the development and operation of the project." Section 469(h), setting out "the passive loss rule," defines material participation as activity that is "regular," "continuous," and "substantial." Pioneers flunks the test by all three criteria. It has shown no regular, no continuous, no substantial activity in developing or operating the projects. Moreover, under § 42(h)(5)(c) to qualify as a section 42(h) nonprofit, Pioneers had to be "determined by a State housing credit agency not to be affiliated with or controlled by a for-profit organization." Nothing in the record establishes such a determination by a State housing credit agency.

As Pioneers has not shown itself to be a section 42(h) nonprofit, we have no reason to decide the relation between section 42(h) and section 501(c)(3) and no need to decide if the former modifies the latter. The usual rules for applying section 501(c)(3) apply. The Tax Court has found that one substantial purpose of Pioneers was a non-exempt purpose and that carrying out that purpose would inure to private benefit. We are given no reason to hold these factual findings clearly erroneous.

As Pioneers explains its argument on rehearing, it is all by way of analogy. Pioneers is not a section 42(h) entity and has never sought to be one; Pioneers simply points to section 42(h) as a sign that Congress meant some section 501(c)(3) entities to be yoked with for profit entities.

We need not address this contention as it is not the case presented. The case of Pioneers is governed by a single statute, section 501(c)(3). Pioneers invokes *Plumstead Theatre Society, Inc. v. CIR*, 675 F.2d 244 (9th Cir.1982), where we held the Tax Court not to be clearly erroneous in finding a nonprofit theatre group to be operated exclusively for charitable purposes under these circumstances: outside investors put up some of the capital needed by the group to put on "First Monday in October" but the investors were not shareholders nor officers nor directors of the theatre group. Factually the case is distinct from this one where two of the partners in Grant Square were also directors of Pioneers. The Tax Court was not clearly erroneous in its findings as to the non-ex-

empt purpose of Pioneers. Accordingly, the judgment of the Tax Court must be AFFIRMED.