T.C. Memo. 2000-318


UNITED STATES TAX COURT


THE NATIONALIST FOUNDATION, A MISSISSIPPI NON-PROFIT CORPORATION,
Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14871-98X.                    Filed October 11, 2000.


Richard Barrett, for petitioner.

Joan Ronder Domike, for respondent.


MEMORANDUM OPINION

COHEN, Judge:  Respondent determined that The Nationalist Foundation (petitioner) does not qualify as a section 501(c)(3) charitable organization and, therefore, is not exempt from Federal taxation under section 501(a).  Pursuant to section 7428 and title XXI of the Tax Court Rules of Practice and Procedure, petitioner seeks a declaratory judgment that it is a qualified organization under section 501(c)(3).  The issues for decision

are whether petitioner operates exclusively for charitable and/or educational purposes and whether the Commissioner treated petitioner differently from other similarly situated organizations in violation of petitioner's due process and equal protection rights under the 5th and 14th Amendments to the Constitution.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The administrative record, which includes all of the facts upon which the Commissioner made the final adverse determination, was submitted to the Court under Rule 217(b)(1) and is incorporated herein by this reference.

Petitioner is a nonprofit Mississippi corporation with its principal office in Jackson, Mississippi.  Petitioner's articles of incorporation, filed on March 25, 1996, list Vince Thornton and Dan Daniels as incorporators and Richard Barrett (Barrett) as registered agent.  Barrett is also serving as counsel to petitioner in this action.  Wendell Garner replaced Barrett as registered agent on or around October 30, 1997.

On Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, petitioner stated that its principal activities are:

Conducting forums to discuss Constitutional rights' issues, stressing the First Amendment; conducting public access cable television and internet programs featuring guests, interviews and documentaries on current issues stressing the use of lawful, peaceful and positive means to achieve democratic ends.

Conducting litigation (or amicus curiae) to lessen the burdens of government under the "private attorney general" method to secure and advance civil, constitutional and First Amendment rights.

According to petitioner, "private attorney general" means that "citizens assist in enforcement of the laws, saving the government time and expense of doing so, such as by private litigation". Petitioner's constitution states that it shall be a nonprofit charitable and educational organization dedicated to advancing American freedom, American democracy, and American nationality.

Petitioner seeks to become the legal and educational arm of rightist and promajority Americans. Petitioner states, in a letter soliciting donations from the public, that it will use the courts to bring "terrorists" who attack promajority demonstrators to justice. The letter cites two examples of events where petitioner would bring litigation using the "private attorney general" technique:

In Simi Valley, self-described communists advertised in the newspaper that they would kill patriots assembled to thank the jury that acquitted Officers Koon and Powell (Police officers accused of beating Rodney King).

In New Hampshire, avowed homosexuals advertised that they would attack patriots calling for abolishing the * * * [Martin Luther King, Jr.] Holiday. It took massive intervention by riot police to back them off.

Both of these events were assemblies organized by Barrett, in which promajority demonstrators were attacked by counterdemonstrators. Petitioner also plans to file amicus curiae briefs in cases involving the First Amendment rights of promajority-minded Americans and to use 42 U.S.C. sec. 3604(e) as an antiblockbusting law to "save" neighborhoods by suing incoming minorities.

Petitioner will use the internet to conduct seminars for teaching skills for more effective social action. The administrative record contains a transcript from only one seminar, which was conducted February 18, 1997. The seminar, recounted on the website of petitioner, gives students instruction on how to advocate peacefully without violating laws pertaining to hate crimes, housing violations, harassment, and racketeering. Petitioner's home page also contains links to other articles entitled "Constitutional Protection", "Educational Outreach", "Nationalist Ideology", "Private Attorney-General", "Pro-Democracy Methodology", "Relief for the Poor", and "Using the First Amendment as Democracy's Shield and Sword". The administrative record, however, does not contain copies of these

articles despite attempts by the Commissioner to obtain them from petitioner.

Petitioner allocates its time in the following manner:

| | |
|---|---|
| Internet seminars and preparation | 15% |
| Researching legal and educational issues | 20% |
| Website setup and maintenance | 25% |
| Administration, correspondence, record keeping | 30% |
| Meetings and conferences | 10% |

The actions of petitioner are designed to counteract the work of organizations such as the NAACP Legal Defense Fund, Inc., and the American Civil Liberties Union. Petitioner characterizes these groups as "the leftist threat to our liberties".

Petitioner's donation solicitation material contains several distortions of fact. Petitioner's statement, in its solicitation letter, that "avowed homosexuals advertised that they would attack patriots" was fabricated from a newspaper article that reads "Members of the National Peoples Campaign plan to shadow Barrett outside the State House beginning at 8 a.m. to oppose his ultra-conservative views. And they are looking for all the picketers they can get." (Emphasis added.) The same solicitation letter also claims that petitioner has in its possession "actual photos of the terrorists in the act of attacking the Anti-King Rally at the State Capitol." Petitioner, however, has only one photograph of three individuals holding a banner, which opposes the views of petitioner. The individuals

depicted in the photograph are not engaged in any kind of attack on Barrett or his fellow demonstrators.

On December 9, 1996, petitioner submitted its Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code. Respondent issued an initial adverse determination on August 4, 1997. Petitioner appealed to the Internal Revenue Service Office of Appeals, which gave a final adverse determination on June 19, 1998, denying tax-exempt status to petitioner under section 501(c)(3). The Commissioner's reasons for denial stemmed from the determination that petitioner has failed to establish that it is operated exclusively for exempt purposes, that net earnings will not inure to the benefit of private individuals, and that petitioner will not serve private interests. Petitioner challenges that determination in this action for declaratory judgment.

## Discussion

Petitioner bears the burden of proving that it is a section 501(c)(3) organization. See Rule 217(c)(2)(A). In order for petitioner to meet this burden, the administrative record, upon which this case is to be decided, must contain enough evidence to support a finding contrary to the grounds set forth in the notice of determination. See Nationalist Movement v. Commissioner, 102 T.C. 558 (1994), affd. 37 F.3d 216 (5th Cir. 1994); Church in Boston v. Commissioner, 71 T.C. 102, 105 (1978).

During the administrative proceeding, petitioner attempted to countermand and withdraw several of its comments, practices, and activities after the Commissioner determined that these items would preclude petitioner from qualifying as a section 501(c)(3) organization. However, we review the administrative record in its entirety.

Section 501(a) provides tax-exempt status for organizations described in section 501(c). Section 501(c)(3) includes the following organizations:

> (c)(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, * * * and which does not participate in, or intervene in * * * any political campaign on behalf of (or in opposition to) any candidate for public office.

Contributions to organizations described in section 501(c)(3) are generally deductible to donors. See sec. 170(a)(1).

To come within the terms of section 501(c)(3), an organization must be both "organized" and "operated" exclusively for tax-exempt purposes. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. The presence of a single substantial nonexempt purpose precludes exempt status for the organization, regardless of the number or importance of exempt purposes. See Better Bus. Bureau

v. United States, 326 U.S. 279, 283 (1945).  The actual purposes
of the organization, not necessarily limited to those purposes
stated in the organizing documents, are the appropriate focus.
See American Campaign Academy v. Commissioner, 92 T.C. 1053, 1064
(1989).

As stated in the regulations, the "operational test" is as
follows:

> An organization will be regarded as "operated
> exclusively" for one or more exempt purposes only if it
> engages primarily in activities which accomplish one or
> more of such exempt purposes specified in section
> 501(c)(3).  An organization will not be so regarded if
> more than an insubstantial part of its activities is
> not in furtherance of an exempt purpose.  [Sec.
> 1.501(c)(3)-1(c)(1), Income Tax Regs.]

Of the exempt purposes listed in section 501(c)(3), petitioner
maintains that it operates for charitable and educational
purposes.

The term "charitable" is used in section 501(c)(3) in its
generally accepted legal sense and includes, but is not limited
to:

> Relief of the poor and distressed or of the
> underprivileged; advancement of religion; advancement
> of education or science; erection or maintenance of
> public buildings, monuments, or works; lessening of the
> burdens of Government; and promotion of social welfare
> by organizations designed to accomplish any of the
> above purposes, or (i) to lessen neighborhood tensions;
> (ii) to eliminate prejudice and discrimination;
> (iii) to defend human and civil rights secured by law;
> or (iv) to combat community deterioration and juvenile
> delinquency.  * * *  [Sec. 1.501(c)(3)-1(d)(2), Income
> Tax Regs.]

The term "educational" as used in section 501(c)(3) is defined as the instruction or training of the individual for the purpose of improving or developing his capabilities or the instruction of the public on subjects useful to the individual and beneficial to the community. An organization may be educational even though it advocates a particular position or viewpoint. See sec. 1.501(c)(3)-1(d)(3)(i), Income Tax Regs.

Petitioner argues that its activities, which promote free speech and create forums for the exchange of ideas and information, are charitable and educational by nature. The rationale of petitioner is that freedom of speech is the highest national priority, and, if freedom is extended to even one group or individual, all Americans benefit. Respondent claims that petitioner has failed to prove that its activities are charitable and educational within the meaning of section 501(c)(3).

In order to gain section 501(c)(3) status, a taxpayer must openly and candidly disclose all facts bearing upon the organization, its operations, and its finances so that the Court may be assured that it is not sanctioning an abuse of the revenue laws by granting a claimed exemption. Where such a disclosure is not made, the logical inference is that the facts, if disclosed, would show that the taxpayer fails to meet the requirements of section 501(c)(3). See Bubbling Well Church v. Commissioner, 74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981).

The record is vague and inconsistent concerning the purported activities of petitioner.  Petitioner has produced only one transcript of a seminar conducted from its website.  The home page of petitioner has links to articles entitled "Constitutional Protection", "Educational Outreach", "Nationalist Ideology", "Private Attorney-General", "Pro-Democracy Methodology", "Relief for the Poor", and "Using the First Amendment as Democracy's Shield and Sword", which petitioner has refused to place in the administrative record.  Also, petitioner has attempted to countermand and withdraw much of the administrative record, such that only a skeletal description of its activities would remain for the Court to examine if we were to allow petitioner to modify the administrative record.  The reasonable inference from the record is that petitioner does not meet the requirements of section 501(c)(3).

The few activities of petitioner that have been disclosed fall outside of the definitions of "charitable" and "educational" under section 501(c)(3).  Section 1.501(c)(3)-1(d)(2), Income Tax Regs., specifically states that examples of charitable activities are ones designed "to lessen neighborhood tension" and "to eliminate prejudice and discrimination."  Petitioner's actions serve the purpose of increasing social activism of promajority and rightist beliefs and are antithetical to these examples.

In addition, some of petitioner's materials contain distortions of fact.  Distortion of facts is the second negative factor of the methodology test of Rev. Proc. 86-43, 1986-2 C.B. 729, applied by the Commissioner during the administrative process.  The methodology test is applied to resolve whether a taxpayer is operated exclusively for educational purposes and includes:

1.  Whether or not the presentation of viewpoints unsupported by a relevant factual basis constitutes a significant portion of the organization's communications.

2.  To the extent viewpoints purport to be supported by a factual basis, are the facts distorted.

3.  Whether or not the organization makes substantial use of particularly inflammatory and disparaging terms, expressing conclusions based on strong emotional feelings rather than objective factual evaluations.

4.  Whether or not the approach to a subject matter is aimed at developing an understanding on the part of the addressees, by reflecting consideration of the extent to which they have prior background or training.

In Nationalist Movement v. Commissioner, 102 T.C. 558 (1994), affd. 37 F.3d 216 (5th Cir. 1994), this Court addressed the issue of whether Rev. Proc. 86-43, supra, is constitutional, which is raised by petitioner in this case.  The taxpayer in

Nationalist Movement was an organization whose activities are very similar to the activities of petitioner. Barrett served as the taxpayer's chairman, treasurer, and attorney in that case. This Court held that Rev. Proc. 86-43, supra, is not overbroad and does not violate the 1st and 14th Amendments to the Constitution. See id. at 583-589.

Citing the 5th and 14th Amendments to the Constitution, petitioner argues that respondent has treated it differently from other organizations similarly situated, thereby violating its due process and equal protection rights. The 14th Amendment provides that no State shall deny to any person the equal protection of the laws. The Fifth Amendment, as applicable to the Federal Government, has no equal protection clause, but its due process guarantees incorporate similar principles. See Regan v. Taxation with Representation, 461 U.S. 540, 542 n.2 (1983); Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

Petitioner moved to compel discovery relating to these constitutional arguments after the parties had filed the administrative record with the Court. Only in very unusual circumstances and upon good cause shown will the Court permit either party to supplement the administrative record. See Rule 217(a); Nationalist Movement v. Commissioner, 37 F.3d 216, 218-219 (5th Cir. 1994), affg. T.C. Memo. 1992-698. In response to petitioner's motion, this Court concluded that good cause had

not been shown for submission of evidence in addition to the administrative record, and, therefore, the motion was denied. What is contained in the administrative record, in terms of petitioner's factual foundation, is wholly unpersuasive.

Using as a source an IRS publication, "Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986", revised to September 30, 1989, petitioner points out that there are many listed organizations whose names begin with words of apparent ethnic, racial, or sexual partiality, such as "Black", "Hispanic", "Jewish", and "Gay". An important disparity, according to petitioner, is the conspicuous absence of "White" organizations.

This issue has already been addressed by this Court in Nationalist Movement v. Commissioner, 102 T.C. at 594-596, in which we held that there was no evidence of a constitutional violation. Petitioner's arguments are identical to those of the taxpayer in Nationalist Movement. Therefore, there is no reason to change the analysis or the result reached in that opinion.

For the reasons stated, we conclude that petitioner is not operated as a section 501(c)(3) organization. We have considered

the remaining arguments of petitioner, and they are either irrelevant or otherwise lack merit.

<u>Decision will be entered upholding respondent's determination</u>.