# United States Tax Court

T.C. Memo. 2023-62

MEMORIAL HERMANN ACCOUNTABLE CARE ORGANIZATION,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 4412-22X.                          Filed May 16, 2023.

————————

*Anthony J. DeRiso III*, *Gerald M. Griffith*, and *Kathryn Keneally*, for petitioner.

*Marie E. Small* and *Mary Michelle M. McCarthy*, for respondent.

## MEMORANDUM OPINION

KERRIGAN, *Chief Judge*: In a final adverse determination letter dated December 14, 2021, respondent denied petitioner exemption from federal income tax under section 501(a).[1] Petitioner exhausted its administrative remedies as required by section 7428(b)(2) and Rule 210(c)(4) and on March 10, 2022, timely filed a Petition with this Court seeking a declaratory judgment that it is entitled to exempt status as an organization described under section 501(c)(4).

The disposition of an action for declaratory judgment involving the initial qualification or classification of an exempt organization will be made on the basis of the administrative record. Rule 217(a). This

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**Served 05/16/23**

[*2] case has been submitted without trial pursuant to Rule 122. The parties filed a Stipulation to the Administrative Record, which is the only source of the factual summary that follows. *See* Rules 122, 217(b)(1) and (2).

## *Background*

When the Petition was timely filed, petitioner's principal place of business was in Texas.

Petitioner is a nonprofit corporation incorporated on January 23, 2012, under the laws of the State of Texas. Petitioner's recertification of formation describes it as an accountable care organization (ACO), Memorial Hermann Accountable Care Organization (MHACO), organized and controlled by its sole member Memorial Hermann Health System (MHHS). MHHS is a nonprofit corporation organized under the laws of the State of Texas and is exempt from federal income tax under section 501(a) as an organization described by section 501(c)(3).

Petitioner's bylaws state that the board of directors consist of nine or ten members, four of whom are specified officers of MHHS, and one of whom is chair of Memorial Hermann Physician's Network (MHMD), a sister organization to petitioner. The remaining four directors are elected directors. The elected directors include two physicians—including a primary care physician who participates in MHACO—and a Medicare fee-for-service beneficiary served by MHACO.

I.      *Petitioner as an Accountable Care Organization*

Petitioner defines an ACO as "a group of doctors, hospitals, and other health care providers, who come together voluntarily to give coordinated high-quality care to Medicare and other patients." As an ACO petitioner coordinates care for participating patients. Some of these patients are enrolled in Medicare, while others are covered by health insurance plans offered by commercial payors. A patient participates in MHACO when they are assigned to petitioner by either the Centers for Medicare & Medicaid Services (CMS) or a commercial payor. MHACO cannot coordinate a person's health care unless it has access to the person's records via the CMS or an insurer.

Petitioner contracts with its sister corporation, MHMD, to provide petitioner with a physician network that participates in care coordination activities and case management personnel. Individual physicians enter into network participation agreements with MHACO

[*3] or MHMD. These medical providers contract with petitioner to coordinate and provide care for patients in exchange for a share of the payments that petitioner receives under its shared savings programs. Patients do not pay fees to petitioner. CMS permits Medicare beneficiaries to voluntarily identify an ACO physician or practitioner as his or her primary care provider for the purpose of being assigned to an ACO. Patients are not, however, limited to ACO providers and may see the provider of their choosing regardless of affiliation with petitioner.

II.     *Shared Savings Plans*

Petitioner participates in a number of shared savings programs involving the coordination of care for both Medicare and non-Medicare patients. As of November 2019, MHACO was responsible for 451,580 patients. Of these patients, 45,046 are Medicare beneficiaries who participate in MHACO through the Medicare Shared Savings Program (MSSP) administered by CMS. An additional 35,143 Medicare beneficiaries participate in MHACO via private health plans that are paid for by the CMS. In total, 18% of MHACO patient participants are Medicare beneficiaries. The remaining 82%, or 371,391 patients, participating in MHACO receive health coverage from private payors.

     A.     *The MSSP*

The MSSP is a program created by the Secretary of the Department of Health and Human Services (HHS) to promote accountability for care of Medicare beneficiaries, improve the coordination of Medicare fee-for-service items and service, encourage investment in infrastructure, and redesign care processes for high quality and efficient service delivery. Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 3022, 124 Stat. 119, 395 (2010). Under this program groups of healthcare service providers and suppliers that have established a mechanism for shared governance and that meet the criteria specified by HHS are eligible to participate in the MSSP as ACOs. The MSSP is governed by CMS. If CMS concludes that an ACO meets quality performance standards and has achieved savings against a benchmark established by CMS, it is eligible to receive a payment from CMS equal to a portion of the total savings.

Beginning in 2012 petitioner participated in the MSSP. Pursuant to the MSSP petitioner receives a financial distribution from CMS if the assigned beneficiaries' health care improves while costs are decreased. The financial distribution is referred to as a shared savings payment,

[*4] which is a percentage of the cost savings of beneficiaries' healthcare calculated on the basis of CMS's cost benchmarks. These benchmarks are derived from the Healthcare Effectiveness Data and Information Set (HEDIS), a set of metrics developed by the National Committee on Quality Assurance under contract with CMS.

CMS has articulated governance requirements for participation in the MSSP program. *See* 42 C.F.R. § 425.106 (2015). If petitioner were to cease participation in the MSSP, MHHS would be permitted to restructure the board so that it did not meet CMS's governance requirements for participation in the MSSP.

### B. *Commercial Payor Shared Savings Plans*

In addition to the MSSP program, petitioner also negotiates shared savings plans with commercial payors. Under these arrangements, the shared savings payments petitioner receives are determined similarly to the MSSP shared savings payments in that payment may be earned when a specific metric, defined with reference to HEDIS and cost savings, is met. The metrics and categories considered under the non-MSSP shared savings plans vary with respect to the specific attributes of the patient population covered by the non-Medicare shared savings agreement. Under these agreements, performance is measured, at least in part, on the basis of cost savings to the commercial payors. The reduced cost of care directly benefits the commercial payors; from 2014 through 2019, these savings totaled over $70 million, with savings reaching approximately $15 million per year for 2016 and 2018.

In addition to the commercial payors involved in petitioner's non-MSSP activities, the healthcare providers participating in MHACO also receive a benefit from the commercial shared savings plans. A portion of the shared savings payments petitioner receives from commercial payors is distributed to participating healthcare providers as an incentive to participate in MHACO. The aggregate payments to healthcare providers for 2017, 2018, and 2019 equaled approximately $42 million, $20 million, and $18 million, respectively.

### III. *Exhaustion of Administrative Remedies*

Petitioner filed with respondent Form 1024, Application for Recognition of Exemption Under Section 501(a), dated December 7, 2017, seeking recognition as an organization described in section 501(c)(4). Petitioner's application represented that it seeks "to improve

[*5] the health and social welfare of vulnerable patient populations of its parent. . . . [Its] activities are focused on patients with complex or chronic conditions and who otherwise may have challenges navigating the healthcare system effectively." The application provided financial information and other information related to petitioner's fiscal years ending June 30, 2013, through and including June 30, 2017.

Respondent issued a letter on April 15, 2019, requesting additional information supporting petitioner's application. In response petitioner provided additional financial information relating to the fiscal year ending June 30, 2018, and prior years. On January 16, 2020, respondent issued a proposed adverse determination letter concluding that petitioner is not described in section 501(c)(4). In the proposed adverse determination letter, respondent asserts that petitioner does not qualify as an organization described under section 501(c)(4) because the activities it conducts under its non-MSSP programs do not serve the public. Rather, respondent asserts that petitioner's non-MSSP programs primarily benefit the insurance companies and healthcare providers with which petitioner contracts.

Petitioner filed a protest with the IRS Independent Office of Appeals (Appeals) on March 16, 2020. The protest included information updated through November 2019. On September 8, 2020, respondent responded to petitioner's protest with a rebuttal in which he declined to reconsider his proposed adverse determination. Appeals held conferences with petitioner on June 29 and July 14, 2021. On December 14, 2021, respondent issued to petitioner a final adverse determination letter stating that petitioner was "not organized and operated for the purposes of promoting the social welfare and providing a community benefit."

*Discussion*

I.    *Scope and Standard of Review*

Section 7428(a)(1)(E) confers jurisdiction on the Court to make a declaration in a case of actual controversy involving a determination by the Commissioner with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(4) which is exempt from tax under section 501(a).

The scope of the Court's review is limited to the Stipulated Administrative Record pursuant to Rule 217. *See Hous. Law. Referral Serv., Inc. v. Commissioner*, 69 T.C. 570, 577 (1978) ("To allow . . . facts

**[\*6]** not otherwise in the administrative record be introduced in evidence by testimony or stipulation in a section 7428 declaratory judgment proceeding would convert that proceeding from a judicial review of administrative action to a trial de novo."). Petitioner bears the burden of proving that the Commissioner's determination is incorrect. *See* Rule 142(a); *Partners in Charity, Inc. v. Commissioner*, 141 T.C. 151, 162 (2013). The scope of our inquiry is "limited to the propriety of the reasons given by the Commissioner for denying an organization's application for exemption," rather than a de novo review of the administrative record. *IHC Health Plans, Inc. v. Commissioner*, T.C. Memo. 2001-246, slip op. at 29, *aff'd*, 325 F.3d 1188 (10th Cir. 2003).

II.      *Section 501(c)(4)*

Section 501(a) generally exempts from taxation an organization described in subsection (c)(4). To qualify as an organization described in section 501(c)(4), an entity must show that it is (1) a civic organization, (2) not organized for profit, and (3) operated exclusively for the promotion of social welfare. *See People's Educ. Camp Soc'y, Inc. v. Commissioner*, 331 F.2d 923, 929 (2d Cir. 1964), *aff'g* 39 T.C. 756 (1963); Treas. Reg. § 1.501(c)(4)-1(a)(1). Additionally, a qualifying organization must show that "no part of [its] net earnings . . . inures to the benefit of any private shareholder or individual." § 501(c)(4)(B).

Respondent does not disagree that petitioner is a civic organization organized not for profit. Rather respondent argues that petitioner does not operate exclusively for the promotion of social welfare. Respondent asserts that "petitioner does not primarily promote the common good and general welfare of the Greater Houston Community because it operates primarily for the benefit of commercial payors."

The standard for tax-exempt status prescribed by section 501(c)(4) requires that an organization be "operated exclusively for the promotion of social welfare." An organization will be found to operate exclusively for the promotion of social welfare "if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community." Treas. Reg. § 1.501(c)(4)-1(a)(2)(i). An organization will not be deemed to operated exclusively for the promotion of social welfare if it "is carrying on a business with the general public in a manner similar to organizations which are operated for profit." *Id.* subdiv. (ii).

**[\*7]**    The Supreme Court has held "operated exclusively" to mean that the presence of a single, substantial nonexempt purpose will preclude exempt status, regardless of the number or importance of exempt purposes. *See Better Bus. Bureau of Wash., D.C., Inc. v. United States*, 326 U.S. 279, 283 (1945). Regarding section 501(c)(4) organizations specifically, courts have adopted the same standard and have held that a single substantial nonexempt purpose will preclude exemption as a social welfare organization. *See Contracting Plumbers Coop. Restoration Corp. v. United States*, 488 F.2d 684, 686 (2d Cir. 1973) ("[T]he presence of a single substantial non-exempt purpose precludes exempt status regardless of the number or importance of the exempt purposes."); *People's Educ. Camp Soc'y, Inc.*, 39 T.C. at 772.

In the context of section 501(c)(4), courts have held that an organization that operates primarily for the benefit of its members, rather than for the benefit of the community as a whole, is not an organization described by section 501(c)(4). *See Contracting Plumbers Coop. Restoration Corp.*, 488 F.2d at 687 (holding an organization that provides "substantial and different benefits to both the public and its private members" is not "'primarily' devoted to the common good" as required by section 501(c)(4)), *Commissioner v. Lake Forest, Inc.*, 305 F.2d 814, 818 (4th Cir. 1962) (holding an organization that is "public-spirited but privately-devoted" may benefit the community incidentally but does not qualify as a section 501(c)(4) organization), *rev'g and remanding* 36 T.C. 510 (1961).

Many cases dealing with section 501(c)(4) involve organizations that fail to qualify as section 501(c)(4) organizations because, despite providing an "undisputed benefit to the people," the presence of a substantial nonexempt purpose precluded exemption from federal income tax. *See Contracting Plumbers Coop. Restoration Corp.*, 488 F.2d at 686. For example, in *Vision Service Plan* the taxpayer's primary activity was contracting with insurance companies and other healthcare providers to arrange for vision care service and discounted vision supplies for enrolled employees or members, but individual members of the public could not enroll in the taxpayer's plans. The district court stated that while the taxpayer contributed to the betterment of society, its work "incidentally redounds to society but this is not the 'social welfare' of the tax statute." *Vision Serv. Plan v. United States*, No. CIVS041993LKKJFM, 2005 WL 3406321, at \*8 (E.D. Cal. Dec. 12, 2005) (quoting *Commissioner v. Lake Forest, Inc.*, 305 F.2d at 818), *aff'd*, 265 F. App'x 650 (9th Cir. 2008).

**[\*8]** III.   *Analysis*

Petitioner fails to qualify as an organization described by section 501(c)(4) because its non-MSSP activities primarily benefit its commercial payor and healthcare provider participants, rather than the public, and therefore constitute a substantial nonexempt purpose. While petitioner's stated goal of providing affordable healthcare to patients is an admirable one, the provision of healthcare alone is insufficient to qualify for recognition of exemption under section 501(c)(4). *See Vision Serv. Plan*, 2005 WL 3406321, at \*4. Petitioner's non-MSSP activities benefit primarily the commercial payors and healthcare providers with which it contracts. To that end, petitioner contravenes the requirements of section 501 by conducting business with the public in a manner similar to a for-profit business. *See* Treas. Reg. § 1.501(c)(4)-1(a)(2)(ii).

Furthermore, petitioner has failed to demonstrate that its non-MSSP activities benefit the public. There is no evidence that petitioner has coordinated with the State of Texas to administer healthcare to the Greater Houston community, and petitioner has not otherwise shown that its non-MSSP activities promote the common good and general welfare of the community. Here, as in *Vision Service Plan*, any benefit that the public may derive from petitioner's non-MSSP activities is incidental to the benefits received by the commercial payors and healthcare providers.

IV.   *Conclusion*

We find that petitioner has not met its burden of showing that it is an organization described under section 501(c)(4). Petitioner's non-MSSP activities primarily benefit commercial payors and healthcare providers and thereby constitute a substantial nonexempt purpose precluding petitioner from qualifying as an organization described by section 501(c)(4). Petitioner has not demonstrated that its non-MSSP activities promote the common good and general welfare of the community, nor has petitioner shown that its nonexempt activities otherwise benefit the public. For these reasons, we agree with respondent's determination that petitioner does not qualify for exemption from federal income tax under section 501.

To reflect the foregoing,

*An appropriate decision will be entered.*